UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ONEWEST BANK, FSB, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No.:  4:12CV-0081-MLM |
| vs. | ) |
| | ) |
| IRON COUNTY FARMS, INC. et al. | ) |
| | ) |
| Defendants. | ) |
| ---------------------------------------------------------- | |
| GEORGE MIDDLETON AND | ) |
| MIDDLETON PROPERTIES, INC., | ) |
| | ) |
| Counterclaimant and | ) |
| Third-Party Counterclaimant | ) |
| | ) |
| vs. | ) |
| | ) |
| ONEWEST BANK, FSB | ) |
| | ) |
| Counterclaim Defendant. | ) |
| | ) |

### COUNTERCLAIMANTS' RESPONSE TO PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

COMES NOW Counterclaimant and Third Party Counterclaimant (hereinafter collectively "Counterclaimants"), by and through counsel, and in response to Plaintiff OneWest Bank, FSB's (hereinafter "OneWest") Motion to Dismiss Counterclaims hereby states as follows:

1.  As a preliminary issue, Plaintiff alleges that Middleton Properties, Inc. has not properly intervened and as such its Counterclaims are not properly before this Court.  In response, Middleton Properties, Inc. has filed a proper Motion for Intervention.  However, as a judgment debtor in the underlying action which Plaintiff is attempting to collect upon, Middleton Properties, Inc. is believed to be a necessary party to this action.

542747

1

**COUNT I – NEGLIGENCE – INDIANA FORECLOSURE SALE**

Plaintiffs allege that Count I of Counterclaimants' Counterclaim fails to state a claim for four reasons:

A. It is an impermissible collateral attack on the Indiana Judgment;

B. It is barred by the doctrine of collateral estoppel;

C. It fails to allege that OneWest failed to follow Indiana statute on foreclosures; and

D. Indiana does not follow the restatements "fair market value" approach. Plaintiffs additionally assert that the allegations are insufficient under *Twombly*.

Plaintiff's allegations that Count I of Counterclaimants' Counterclaim is an impermissible collateral attack on the Indiana Judgment and is barred by the doctrine of collateral estoppel, are simply misplaced and inapplicable to the instant action. In the Indiana state court proceedings, Plaintiff obtained a Judgment in the amount of $3,229,750.76 and in connection with that Judgment, were granted the right to foreclose on property owned by Counterclaimants located in the State of Indiana. *Subsequent* to Plaintiff's receipt of said Judgment, it proceeded with the actual foreclosure sale. Counterclaimants' allegations with respect to Count I of their Counterclaim relate solely to this *subsequent* foreclosure sale, which occurred after Plaintiff obtained their April, 2011 Judgment and it wasn't until after the foreclosure sale was completed and the sale proceeds applied to the alleged deficiency that Counterclaimants' cause of action accrued.

That being so, there would be absolutely no way whatsoever that Counterclaimants could have asserted the instant cause of action as a compulsory Counterclaim in that said cause of action simply did not exist at any time during the pendency of the Indiana Court proceeding and likewise cannot be considered a collateral attack upon said Judgment in that it is a new cause of action first accruing as a direct and proximate result of said foreclosure sale, which again

542747

2

occurred *subsequent* to the April, 2011 Judgment.  Basically, it has no relation to the Indiana Judgment other than said Judgment is what granted Plaintiff the right to proceed with the foreclosure sale.

With respect to Count I of their Counterclaim, Counterclaimants properly and fully alleged that Plaintiff breached its duty by failing to comply with the requisite Indiana foreclosure statutes which require Plaintiff to take any reasonable steps whatsoever to offer to sell and sell the property in a manner reasonably likely to bring the highest net proceeds from said sale. Counterclaimants further allege several specific breaches including severely limiting the pool of potential buyers and the ability for potential buyers to properly conduct due diligence, obtain appropriate financing and have the necessary time to do the same. <u>Counterclaim, Count I, Paragraph 9</u>.

At this initial pleading stage, for Plaintiffs to assert that additional detail must be pled, such as the actual time limit and restrictions imposed upon potential purchasers as a result of the manner in which the foreclosure sale was conducted, are simply unknown absent Counterclaimants being given an opportunity to conduct discovery in that, again, said proceedings occurred after the Indiana litigation had been completed, Judgment entered, and the case closed.  However, the actual facts Counterclaimants have pled certainly state a valid cause of action and clearly provide Plaintiff with notice of what it is being sued for.

Plaintiff's allegations that Counterclaimants do not allege that OneWest failed to follow Indiana statute on foreclosure is simply false, as evidenced by the afore-cited Paragraph 9 of Counterclaimants' Counterclaim, as well as Paragraph 8 thereof, which sets forth, per the applicable Indiana foreclosure statute, Plaintiff's duty and specifically how that duty was breached.  <u>Counterclaim, Count I, Paragraphs 8 and 9.</u>

542747

3

As for the assertion by Plaintiff that Indiana does not follow the restatements "fair market value" approach, as a basis for dismissal, is nothing more than a red herring in that the use/reference by Counterclaimants of the fair market value in Count I is solely as a basis to support the allegations of the unreasonableness of the foreclosure sale and how the damages therefrom were calculated.  *Counterclaim, Count I, Paragraphs 10 and 11.*

As such, Count I of Counterclaimants' Counterclaim properly pleads all necessary elements, with factual allegations included therein, to substantiate it's cause of action, which did not accrue until after the Indiana foreclosure sale, which again, did not occur until after the Indiana state court proceedings had been concluded.  Likewise, for the reasons set forth herein, Plaintiffs assertion that Count I of the Counterclaim fails under *Twombly* is hereby defeated.

WHEREFORE no basis exists to dismiss Count I of said Counterclaim and Plaintiff's Motion to Dismiss Count I should be denied.

## COUNT II – FRAUDULENT MISREPRESENTATION

Plaintiffs allege that Count II of Counterclaimant's Counterclaim fails to state a claim because:

    A.    Counterclaimant should have filed it as a Counterclaim in the Indiana action;

    B.    It is barred by collateral estoppel;

    C.    It is an improper collateral attack on a Foreign Judgment;

    D.    Counterclaims do not allege the required elements to state a claim for fraudulent misrepresentation; and

    E.    Counterclaimants failed to plead their fraud claim with particularity.

Similar to Plaintiff's basis for their Motion to Dismiss Count I, the allegations that Counterclaimants should have filed Count II as a Counterclaim in the Indiana action, that it is barred by collateral estoppel, and that it is an improper collateral attack on a Foreign Judgment

are misplaced for all of the same reasons.  Specifically, the fraudulent misrepresentations giving rise to Counterclaimants' cause of action in Count II of the Counterclaim arise from the alleged amount of deficiency Plaintiff alleges it is entitled to.  The amount of the deficiency directly relates to and is calculated only after the foreclosure sale and proceeds therefrom are applied to the Indiana Judgment.  Again, it would be impossible for Counterclaimants to have brought any type of action relating thereto in the Indiana Court proceedings due to the fact that said proceedings were concluded prior to knowledge of the fraudulent misrepresentation and accrual of said action.  The cases cited by Plaintiff substantiate Counterclaimants' position in that those cases involve causes of action that existed during the pendency of litigation and not causes of action that accrued subsequent to pending litigation.  Specifically, Plaintiffs cite *Ratcliff v. Citizen's Bank of Western Indiana*, 768 N.E. 2d, 964, 967.  Citing *Ratcliff*, Plaintiffs specifically state, "In Ratcliff the Defendant bank had previously initiated a foreclosure proceeding against the borrower (Case 1) after the borrower defaulted on several personal and business loans. Id. ***While that lawsuit was pending***, the borrower filed a separate civil complaint against the bank (Case 2) alleging that the bank had acted inappropriately in promising to lend them money and then reneging on that promise, which caused Plaintiff to default on their loans."  Plaintiff next cites *Broadhurst v. Moenning*, 633 N.E. 2d, 326, 331, and states, "In *Broadhurst* the Plaintiff borrower sued Defendant bank for breach of contract and interference with contractual relations (Case 2) based on the bank's alleged failure to comply with the party's lending agreement. Id at 329.  The bank, which had filed a complaint against a borrower (Case 1) to foreclose on property securing the borrower's debt, moved for Summary Judgment on the borrower's claims, arguing that the borrower's claims were compulsory Counterclaims in Case 1 and borrower was therefore barred from asserting them in Case 2. Id. at 330."

542747

5

As is evident, in both those cases, the borrower's causes of action were clearly present and had accrued during the time period of the initial litigation (denominated Case 1 in both cases).

In the instant action, the situation is clearly distinguishable in that Counterclaimants causes of action and allegations contained therein did not occur or accrue until after the Indiana state court action had been concluded in its entirety.  To address the actual allegations in more detail, by way of actual numbers, Plaintiff obtained a Judgment in the Indiana state court proceedings in the amount of $3,229,750.76.  Pursuant to Counterclaimants' allegations in Count II of its Counterclaim, "Pursuant to a Purchase and Assumption Agreement entered into by and between Plaintiff and the Federal Deposit Insurance Corporation (hereinafter "FDIC") Plaintiff and FDIC had a Loss Sharing Agreement whereby the FDIC would be responsible for 80% of losses on certain "bad debts" and Plaintiff would be responsible for the other 20%." *Counterclaim, Count II, Paragraph 15*.  Based upon the explanation provided by Plaintiff in its Memorandum of Law, Plaintiff would have been paid by FDIC 80% of that "bad debt," namely $2,583,800.50.

Plaintiff then proceeded to foreclose upon property owned by the debtors in the State of Indiana and received sale proceeds in the approximate amount of $1,550,000.00.  Pursuant to said Purchase and Assumption Agreement, Plaintiff would have paid 80% of that, namely $1,240,000 to FDIC and retained 20%, $310,000.00, for itself.  Based upon the calculations, Plaintiff herein has netted recovery on it's $3,229,750.76 Judgment against Defendants herein in the amount of $2,893,800.50, leaving a deficiency of $335,950.20 ($3,229,750.76 - $2,893,800.50).

Despite that fact, Plaintiff failed to disclose this information to Defendants or Counterclaimants and has pursued damages against Defendants in the amount of $1,824,352.02.

Furthermore, despite the fact that Counterclaimants have prefaced their allegations with the term "Upon information and belief" they have actually set forth these allegations with particularity in Count II of their Counterclaim and have included all of the elements necessary to state a valid cause of action for fraudulent misrepresentation therein, which did not accrue until subsequent to the Indiana foreclosure sale. *Counterclaim, Count II.*

Again, at the initial pleading stage, there can be no dispute that Counterclaimants' Counterclaim sets forth all of the necessary elements for its cause of action, including specific facts pled with particularity, to advise Plaintiff and put Plaintiff on notice of the claims against it such that at this stage, Plaintiff's Motion to Dismiss Count II of Counterclaimants' Counterclaim should be dismissed.

## COUNT III – TORTIOUS INTERFERENCE

Plaintiffs allege that Count III of Counterclaimants' Counterclaim for tortious interference should be dismissed because it fails to allege that Plaintiff interfered with a third party's contract. Specifically, Plaintiff alleges that since the Counterclaim alleges that OneWest is the "successor in interest" to La Jolla Bank's contract, that there can be no tortious interference because OneWest would technically become the contracting party and therefore legally incapable of tortiously interfering with their own contract.

At the initial pleading stage, this is a tricky argument in that the exact nature of the relationship between La Jolla Bank and OneWest and the responsibilities of OneWest with respect to La Jolla Bank's obligations are unknown to Counterclaimants absent conducting discovery on that issue. At the time of filing the Counterclaim, Counterclaimants understanding was that FDIC became the receiver for La Jolla Bank and then entered into a separate contract with OneWest relating to the rights and responsibilities FDIC and OneWest would have with respect to contractual obligations of La Jolla Bank. Counterclaimants did not believe that

OneWest would be "stepping into the shoes" of La Jolla Bank with respect to all of their contractual agreements.  The sole allegation relied on by Plaintiff is contained in Paragraph 24 of Count III of Counterclaimants' Counterclaim which states, "OneWest Bank, as successor to La Jolla Bank, refused to comply with the terms of the contractual agreement by and between Defendant and La Jolla Bank, effectively causing La Jolla Bank to breach that contract, by failing and refusing to lend to Defendants the additional monies needed to complete the golf course project." *Counterclaim, Count III, Paragraph 24*.  It is Counterclaimants' position that simply alleging OneWest to be the "successor" to La Jolla Bank does not insinuate that OneWest "stepped into the shoes of" La Jolla Bank with respect to all of its contractual agreements.  At the pleading stage, Count III of Counterclaimant's Counterclaim properly pleads all necessary allegations of a tortious interference count, with specific factual allegations included therein.

However, should discovery reveal, as Plaintiffs suggest in their Memorandum of Law, that OneWest Bank "stepped into the shoes of" La Jolla Bank with respect to all of La Jolla Bank's contractual agreements, then the correct cause of action to be brought by Counterclaimants would be a breach of contract action as opposed to a tortious interference action, and Counterclaimants would seek leave of this Court to amend their Counterclaim accordingly, should discovery reveal as such.

Moreover, should OneWest be willing to consent to the fact that pursuant to their contractual agreement with the FDIC they "stepped into the shoes of" and are responsible for all of the contractual agreements of La Jolla Bank, Counterclaimants will seek leave to amend their Counterclaim accordingly in a timely manner.  Assuming Plaintiff fails to consent as such, it can only be assumed that the reason for not doing so is because they are not accepting responsibility and/or liability for all contractual agreements of La Jolla Bank, wherein Count III of

542747

8

Counterclaimant's Counterclaim states a valid cause of action which should not be subject to dismissal.

### COUNT IV – UNJUST ENRICHMENT

Plaintiff alleges that Count IV of Counterclaimant's Counterclaim for unjust enrichment fails as a matter of law because:

    A.    Indiana has not adopted the restatement;

    B.    It is not supported by the terms of the Shared Loss Agreement;

    C.    Counterclaims do not allege that they conferred a benefit on OneWest; and

    D.    It constitutes an impermissible attack on a Foreign Judgment and is barred by collateral estoppel.

Counterclaimants hereby voluntarily dismiss Count IV of their Counterclaim without prejudice.

        ROSENBLUM, GOLDENHERSH,
          SILVERSTEIN & ZAFFT, P.C.

        /s/  David G. Bender
        David G. Bender, #53482MO
        7733 Forsyth Blvd., 4th Floor
        St. Louis, Missouri 63105
        (314) 726-6868
        (314) 726-6786 Facsimile
        dgb@rgsz.com
        Attorney for Defendants/Counterclaimants

## Certificate of Service

The undersigned certifies that on this 30th day of April 2012, a true and correct copy of the foregoing has been served via the Court's electronic filing system to:

Christopher M. Hohn
Brian W. Hockett
Brian A. Lamping
Thompson Coburn, LLP
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000 Facsimile
chohn@thompsoncoburn.com
bhockett@thompsoncoburn.com
blamping@thompsoncoburn.com
**Attorneys for Plaintiff**

                                                                                    */s/ David G. Bender*

542747                                                                                                                          10